IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

FRANCES RHUAVA ANTONIO                                                    PLAINTIFF

vs.                               Civil No. 6:16-cv-06100-BAB

NANCY A. BERRYHILL                                                        DEFENDANT
Acting Commissioner, Social Security Administration[1]

## MEMORANDUM OPINION

Frances Rhuava Antonio ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 7).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.     Background:**

Plaintiff protectively filed her disability applications for DIB and SSI on October 30, 2013.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

(ECF No. 10, pp. 13). In her applications, Plaintiff alleges being disabled due to: hepatitis type C, depression, cirrhosis of the liver, jaundice, weakness, anxiety, and ascites. (ECF No. 10, p. 205). Plaintiff alleges an onset date of January 1, 2013. (ECF No. 10, pp. 13, 200). These applications were denied initially and again upon reconsideration. (ECF No. 10, pp. 47-106).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 10, pp. 140-58). Plaintiff's administrative hearing was held on May 4, 2015, in Little Rock, Arkansas. (ECF No. 10, pp. 28-46). Plaintiff was present and was represented by Hans E. Pullen. *Id.* Plaintiff and Vocational Expert ("VE") Mack Welsh testified. *Id.* At the time of this hearing, Plaintiff was forty-eight (48) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). As for her level of education, Plaintiff earned a high school diploma and completed three years of college. (ECF No. 10, p. 31).

After this hearing, on August 7, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 10, pp. 9-22). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2017. (ECF No. 10, p. 14, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2013, her alleged onset date. (ECF No. 10, p. 14, Finding 2). The ALJ determined Plaintiff had the following severe impairments: liver disease, mood disorder, neck pain, status post cervical corpectomy, and hepatitis C. (ECF No. 10, p. 14, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 14-16, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10,

pp. 16-20, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to:

> perform sedentary work as defined in 20 C.F.R. 416.967(a) except [she] can occasionally climb, balance, stoop, bend, crouch, kneel, or crawl; she can perform work in a setting where interpersonal contact is incidental to the work performed, the complexity of the task is learned and performed by rote, with few variables, little judgment, and the supervision required is simple, direct, and concrete.

*Id*.

The ALJ then determined Plaintiff was unable to perform her Past Relevant Work ("PRW"). (ECF No. 10, p. 20, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 10, pp. 40-45). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a charge account clerk, which has a DOT code of 205.367-014, with approximately one thousand one hundred (1,100) jobs in the national economy, and as a ceramic tile inspector, which has a DOT code of 739.687-182, with approximately thirty thousand (30,000) jobs in the national economy. (ECF No. 10, pp. 20-21, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from January 1, 2013, through August 7, 2015, the date of the ALJ's decision. (ECF No. 10, p. 21, Finding 11).

Thereafter, on August 19, 2015, Plaintiff requested review of the hearing decision by the Appeals Council. (ECF No. 10, p. 8). The Appeals Council denied Plaintiff's request on September 12, 2016. (ECF No. 10, pp. 5-7). On October 11, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on October 27, 2016.

(ECF No. 7). This case is now ready for decision.

**2.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently.  *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive

4

months. *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**3.     Discussion:**

In her appeal brief, Plaintiff raises four issues for appeal: 1) the ALJ erred in discrediting Plaintiff's complaints of limitation associated with her severe liver disease and accompanying symptoms; 2) the ALJ erred in failing to properly assess Listing 1.04 despite evidence Plaintiff had herniated discs and required cervical fusion; 3) the ALJ erred in failing to assess Plaintiff's fibromyalgia and peripheral neuropathy, and; 4) the ALJ's finding that Plaintiff can perform work at the sedentary exertion level is not supported by substantial evidence. (ECF No. 13).

**A.     The Listings**

The claimant bears the burden of proving his impairment meets or equals the criteria for a

specific listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. *see Pepper ex rel. Gardner v. Barnhart*, 342 F.3d, 853, 855 (8th Cir. 2004), *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

Plaintiff contends she met the listing requirements of Listings 1.02 and 1.04. Listing 1.02 requires the following criteria:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

6

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.02. Listing 1.04 requires the following criteria:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysethesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.04. Section 1.00(B)(2)(b) defines the inability to ambulate effectively as follows:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily

> living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00(B)(2)(b). Section 1.00(B)(2)(c) defines the inability to perform fine and gross movements effectively as follows:

> c. What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00(B)(2)(c).

Substantial evidence in the record supports that Plaintiff did not meet the criteria of Listing 1.02 because she is able to perform fine and gross movements and ambulate effectively as defined by the Regulations. The ALJ determined Plaintiff was able to attend to her activities of daily living such as caring for her two dogs, preparing simple meals, engaging in light housekeeping, shopping for food and clothing, and managing her own finances. Plaintiff's ability to carry out her activities of daily living demonstrates she is capable of independently initiating and sustaining same and of sustaining a reasonable walking pace over a sufficient distance to carry out those activities. Despite Plaintiff's complaints of pain, Dr. Arthur's objective physical examinations of Plaintiff regularly

8

revealed normal stability, strength, and range of motion in Plaintiff's upper and lower extremities. (ECF No. 10, pp. 503, 508, 511, 558, 562, 564, 602, 604). Ultimately, the ALJ's RFC determination did not include any limitations concerning Plaintiff's ability to reach, push, pull, grasp, and finger. (ECF No. 10, p. 16).

Substantial evidence in the record supports that Plaintiff did not meet the criteria of Listing 1.04. As for the paragraph A criteria, the record contains substantial evidence Plaintiff did not suffer sensory or reflex loss due to nerve root compression. Dr. Arthur's objective physical examinations of Plaintiff regularly revealed normal coordination, gait and station, and sensory findings. (ECF No. 10, pp. 508, 511, 558, 562, 602, 604). Further, the record does not contain an operative note or pathology report of tissue biopsy or medically acceptable imaging revealing spinal arachnoiditis, for purposes of the paragraph B criteria. Finally, as discussed above, Plaintiff does not meet the paragraph C criteria because, as discussed above, she is able to ambulate effectively as defined by the Regulations.

Accordingly, I find substantial evidence in the record as a whole supports the ALJ's finding that Plaintiff's impairments, either alone in combination, did not meet or medically equal the severity of one of the impairments in the Listings.

### B. Subjective Complaints and Credibility Analysis

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529.[3] *see*

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet

9

*Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *see Id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

---

required the analysis of these additional factors. *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

The ALJ properly applied these factors articulated in *Polaski* and gave several good reasons for finding that Plaintiff's subjective complaints are not entirely credible. First, the ALJ discussed Plaintiff's history of alcohol abuse. (ECF No. 10, p. 18). For example, on October 18, 2013, Dr. Rochlani noted that Plaintiff, "has a 30 year long history of alcohol consumption, up to 6 drinks of vodka a day." (ECF No. 10, p. 384). The ALJ further noted that while Plaintiff testified that she stopped drinking in October 2012, Dr. Rochlani's records indicate Plaintiff not only continued to drink, but that she increased her consumption during the relevant period in the three months prior to October 2, 2013, the date she told Dr. Rochlani she actually stopped drinking. (ECF No. 10, pp. 18, 36, 384). Plaintiff also testified that she stopped working in January 2013 because her employer eliminated her position, not due to the disabling nature of her impairments. (ECF No. 10, pp. 31-31); *see Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("[The ALJ] found that she worked for several years despite complaining of the pain she now claims is disabling, and concluding that it was the plant-closing, not her physical condition, that forced Browning out of work. This analysis of prior work is legitimate"). Regarding Plaintiff's alleged mental impairments, the ALJ noted Plaintiff was not receiving formal mental health treatment or counseling from a mental health specialist. (ECF No. 10, p. 18); *see Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2004) (the ALJ may discount a claimant's subjective complaints based on their failure to pursue regular medical treatment).

The ALJ also examined Plaintiff's activities of daily living. (ECF No. 10, p. 15). He noted *Plaintiff was able to care for her two dogs, prepare simple meals, engage in light housekeeping,* shop for food and clothing, and manage her own finances. *Id.* The ALJ did not entirely discount Plaintiff's subjective complaints. (ECF No. 8, p. 1141). For example, the ALJ determined Plaintiff had moderate difficulties in the areas of social functioning and concentration, persistence, and pace

11

and therefore limited Plaintiff's RFC to settings where interpersonal contact is incidental to the work performed, the complexity of the task is learned and performed by rote with few variables and little judgment, and where the supervision required is simple, direct, and concrete. (ECF No. 10, pp. 15-16).

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination. *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

**C.     RFC**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff contends the ALJ failed to assess Plaintiff's alleged fibromyalgia and peripheral neuropathy. (ECF No. 13, pp. 14-18). Plaintiff was diagnosed with fibromyalgia and peripheral neuropathy on only a single occasion, April 22, 2014, by Allison Roberts, a nurse practitioner. A nurse practitioner is not an acceptable medical source for the establishment of the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Moreover, those diagnoses were not included in either Plaintiff's medical history or current problems list on future treatment notes from the same clinic. (ECF No. 10, pp. 535-42, 579-83, 586-88, 592-96). The ALJ's determination, moreover, is consistent with the opinion of Dr. Ballard, a state agency consultant, who had the same treatment notes referencing fibromyalgia and peripheral neuropathy before him and determined Plaintiff's alleged fibromyalgia and peripheral neuropathy were not medically determinable impairments. (ECF No. 10, pp. 93, 98-99). Still, the ALJ gave Plaintiff the benefit of the doubt and included more limitations in his RFC determination than initially determined by the state agency consultants. Based on the foregoing, I find substantial evidence in the record as a whole supports the ALJ's RFC determination and the resulting conclusion that Plaintiff's alleged fibromyalgia and peripheral neuropathy were not medically determinable impairments.

**D.     Hypothetical Questions to the VE**

Plaintiff's argument with regard to the hypothetical questions to the VE are essentially a disagreement with the ALJ's RFC determination. After thoroughly reviewing the hearing transcript along with the entire evidence of record, I find that the hypothetical the ALJ posed to the VE fully set forth the impairments the ALJ accepted as true and which were supported by the record as a whole. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, I find that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments

did not preclude her from performing the duties of a charge account clerk or ceramic tile inspector. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**4.      Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 5th day of September 2017.**

>                     /s/  Barry A. Bryant
>                     HON. BARRY A. BRYANT
>                     U. S. MAGISTRATE JUDGE